UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KYLE WILLIAMS and RACHEL CHRYSLER,

                              Plaintiffs,                      5:19-cv-995 (BKS/MJK)

v.

POLICE OFFICER GREGORY DIPUCCIO
and POLICE OFFICER LIADKA,

                              Defendants.
_____

**Appearances:**

*For Plaintiffs:*
Fred Lichtmacher
The Law Office of Fred Lichtmacher P.C.
116 West 23rd Street, Suite 500
New York, New York 10011

*For Defendants*:
Susan R. Katzoff
Corporation Counsel of the City of Syracuse
Danielle B. Pires
First Assistant Senior Corporation Counsel
Darienn P. Balin
Assistant Corporation Counsel
300 City Hall
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

       Plaintiffs Kyle Williams and Rachel Chrysler bring this action against Defendants Police Officer Gregory DiPuccio and Police Officer Liadka pursuant to 42 U.S.C. § 1983. (Dkt. No. 15). Over the course of litigation, some of Plaintiffs' claims were dismissed. *See Williams v. City of Syracuse*, No. 19-cv-995, 2020 WL 6504630, *3 2020 U.S. Dist. LEXIS 206929, *7

(N.D.N.Y. Nov. 5, 2020) (dismissing *Monell*, malicious prosecution, and fair trial claims). Remaining are Plaintiffs' claims for excessive force and failure to intervene in violation of Plaintiffs' constitutional rights under the Fourth Amendment. (Dkt. No. 15, ¶¶ 22–32); *Williams*, 2020 WL 6504630, at *3, 2020 U.S. Dist. LEXIS 206929, at *7. Presently before the Court is Defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 66). Plaintiffs have filed an opposition memorandum, (Dkt. No. 69), to which Defendants filed a reply, (Dkt. No. 70). The Court heard oral argument on the motion on April 19, 2024. (Text Minute Entry dated Apr. 19, 2024). For the reasons that follow, Defendants' motion for partial summary judgment is granted in part and denied in part.

## II.   FACTS[1]

On September 9, 2016, Plaintiffs were at the Half Penny Pub, and an argument ensued after they were asked to leave by the Half Penny Pub's manager. (Dkt. No. 66-16, ¶¶ 1–2; Dkt. No. 69-2, ¶¶ 1–2). As a result of the argument, "911 was called and the police showed up shortly after [Plaintiffs] left." (Dkt. No. 66-16, ¶ 9; Dkt. No. 69-2, ¶ 9). At approximately 10:30 p.m., Defendant DiPuccio and a City of Syracuse police officer responded to the call, and Half Penny Pub employees provided them with a summary of the incident and a description of the individuals involved. (Dkt. No. 66-16, ¶¶ 10–15; Dkt. No. 69-2, ¶¶ 10–15). Defendant DiPuccio and the other officer left, and Plaintiffs returned to the Half Penny Pub. (Dkt. No. 66-16, ¶ 16; Dkt. No. 69-2, ¶ 16). A bouncer employed by the Half Penny Pub called 911 again, prompting the dispatch of Defendants DiPuccio and Liadka to the Half Penny Pub. (Dkt. No. 66-16, ¶¶ 17–

---

[1] The facts are drawn from Defendants' Statement of Material Facts Not in Dispute and Plaintiffs' Response to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, (Dkt. Nos. 66-16, 69-2), to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein. The Court limits its recitation to undisputed facts relevant to disposition of Defendants' motion. The facts are construed in the light most favorable to Plaintiffs as the non-moving parties. *See Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

2

18; Dkt. No. 69-2, ¶¶ 17–18). Upon arrival, Defendants were informed by the bouncer that the "suspects [from the earlier incident] were kicking the door to the bar and that they had just left, cutting through a parking lot." (Dkt. No. 66-16, ¶ 19; Dkt. No. 69-2, ¶ 19). The bouncer provided Defendants with a description of the two suspects, and Defendants "left the Half Penny Pub on E. Fayette and circled around the block to the 200 block of Walton Street." (Dkt. No. 66-16, ¶¶ 20–21; Dkt. No. 69-2, ¶¶ 20–21). Defendants "went to the bridge area in the 200 block of Walton Street and observed two people matching the description provided by [the bouncer]." (Dkt. No. 66-16, ¶ 22; Dkt. No. 69-2, ¶ 22). Defendants then approached Plaintiffs. (Dkt. No. 66-16, ¶ 23; Dkt. No. 69-2, ¶ 23).

The parties dispute whether, after Defendants approached Plaintiffs, Plaintiff Williams swung his arms, striking the Defendants in their chest areas. (Dkt. No. 66-16, ¶ 31; Dkt. No. 69-2, ¶ 31). The parties also dispute whether Plaintiff Williams resisted Defendants' subsequent attempt to arrest him. (Dkt. No. 66-16, ¶ 33; Dkt. No. 69-2, ¶ 33). It is undisputed that Defendants forced Plaintiff Williams's body to the ground, and as he was going to the ground his face struck concrete. (Dkt. No. 66-16, ¶ 36; Dkt. No. 69-2, ¶ 36). It is also undisputed that Defendant DiPuccio was positioned on the lower half of Plaintiff Williams's body and Defendant Liadka was on the upper half. (Dkt. No. 66-16, ¶ 42; Dkt. No. 69-2, ¶ 42). Defendants assert that they used a limited amount of force while Williams was resisting arrest, and that they were able to get him under control in about two minutes. (Dkt. No. 66-16, ¶¶ 45–60, 66). Defendant Liadka testified that he "administered three knee strikes" to Plaintiff Williams's right side and struck Plaintiff Williams "three times in the face with a closed fist" while Plaintiff Williams was resisting Defendants' attempt to arrest him. (Dkt. No. 66-16, ¶¶ 45, 56; Dkt. No 66-6, at 86–87; Dkt. No. 66-9, at 43–44; Dkt. No. 66-11, ¶¶ 4–5). Defendant DiPuccio testified

that he struck Williams "three times in the torso area to control [his] left hand." (Dkt. No. 66-16, ¶ 51; Dkt. No. 66-6, at 16; Dkt. No. 66-7, at 5; Dkt. No. 66-10, ¶ 5). Plaintiff Williams, on the other hand, testified that he was not resisting arrest and that he was beaten by Defendants for twenty minutes. (Dkt. No. 69-2, ¶¶ 39–52; Dkt. No. 66-12, at 19–20, 23).

The parties similarly dispute whether, after Plaintiff Williams was handcuffed, Plaintiff Chrysler resisted arrest and became combative. (Dkt. No. 66-16, ¶¶ 69–72; Dkt. No. 69-2, ¶¶ 69–72). It is not disputed that Defendant DiPuccio took Plaintiff Chrysler to the ground by kicking her legs out from underneath her, but it is disputed whether Plaintiff Chrysler was handcuffed at that time. (Dkt. No. 66-16, ¶ 73; Dkt. No. 69-2, ¶ 73). Defendant DiPuccio testified that Plaintiff Chrysler was noncompliant, that his arrest of Plaintiff Chrysler took approximately forty-five seconds, and that Defendant Liadka did not assist in the arrest of Plaintiff Chrysler and was "occupied with trying to keep [Plaintiff] Williams under control." (Dkt. No. 66-10, ¶¶ 13–16). Defendant Liadka testified that he did not observe Defendant DiPuccio take Plaintiff Chrysler to the ground, he did not assist in arresting Plaintiff Chrysler, and his "attention remained on [Plaintiff Williams] while [Defendant] DiPuccio went to arrest [Plaintiff] Chrysler." (Dkt. No. 66-11, ¶¶ 11–13). But Plaintiff Chrysler testified that she was not struggling or trying to get away from Defendant DiPuccio and that "she had like four officers with knees in [her] back," including "a blond woman," Defendant DiPuccio, and other officers Plaintiff Chrysler could not see. (Dkt. No. 66-20, at 18). Plaintiff Chrysler testified that the officers' knees were on her "back[,] . . . back of [her] stomach, back of [her] shoulders" and that she had "head pain." (*Id.*).

Eventually, Plaintiffs were transported to Upstate University Hospital via ambulance. (Dkt. No. 66-16, ¶ 90; Dkt. No. 69-2, ¶ 90). Defendant Liadka rode in the ambulance with

Plaintiffs. (Dkt. No. 66-16, ¶¶ 91, 99; Dkt. No. 69-2, ¶¶ 91, 99). Defendant DiPuccio was not present in the ambulance. (Dkt. No. 66-16, ¶¶ 92, 98; Dkt. No. 69-2, ¶¶ 92, 98).

### III.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, the entry of summary judgment is warranted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson*, 477 U.S. at 248).

"If the moving party carries its burden, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (internal quotation marks omitted). Rather than "deny[ing] the moving party's allegations in a general way, the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact." *Id*. (citation omitted). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

IV.     **DISCUSSION**

Defendants move for summary judgment as to Plaintiffs' failure to intervene claims arising from Defendants' alleged uses of excessive force during Plaintiffs' arrests and as to any claim against Defendant DiPuccio arising from actions taken in the ambulance during transportation of Plaintiffs to Upstate University Hospital. (Dkt. No. 66-17, at 7–15). With respect to the failure to intervene claims, Defendants argue: (1) that they were both direct participants in the alleged excessive force used during Plaintiffs' arrests, and they therefore cannot be liable for failure to intervene, and (2) that the circumstances of Plaintiffs' arrests did not provide Defendants' an opportunity to intervene, (Dkt. No. 66-17, at 10–15).

    A.     **Direct Participation**

According to Defendants, they "were direct participants in the alleged excessive force during [Plaintiff] Williams' arrest[,]" and thus, Plaintiff Williams may not separately claim Defendants failed to intervene. (Dkt. No. 66-17, at 11–12). Plaintiffs respond by asserting that courts have permitted excessive force and failure intervene claims to proceed in the alternative beyond summary judgment. (Dkt. No. 69, at 3–6).

It is widely recognized that "[a] police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Lennox v. Miller*, 968 F.3d 150, 158 (2d Cir. 2020) (quoting *Figueroa*, 825 F.3d at 106). To establish a claim for failure to intervene, a plaintiff must show that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Franco v. City of Syracuse*, No. 16-cv-634, 2019 WL 1410348, at *3, 2019 U.S. Dist. LEXIS 52675, at *7 (N.D.N.Y. Mar. 28, 2019) (citation and

6

internal quotation marks omitted). "When a law enforcement officer 'is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable.'" *Buchy v. City of White Plains*, No. 14-cv-1806, 2015 WL 8207492, at *3, 2015 U.S. Dist. LEXIS 163469, *7 (S.D.N.Y. Dec. 7, 2015); *Cornell v. Village of Clayton*, No. 20-cv-1283, 2023 WL 5965431, at *8, 2023 U.S. Dist. LEXIS 162919, *18–19 (N.D.N.Y. Sept. 13, 2023). A plaintiff "may, however, hold [defendant police officers] liable for one or the other." *Buchy*, 2015 WL 8207492, at *3, 2015 U.S. Dist. LEXIS 163469, *7. Therefore, "district courts have allowed excessive force and failure to intervene claims to proceed in the alternative beyond the summary judgment stage." *Franco*, 2019 WL 1410348, at *4, 2019 U.S. Dist. LEXIS 52675, at *7. Federal Rule of Civil Procedure 8(d) supports this outcome by recognizing that claims may be brought in the alternative, even if they are inconsistent. *See* Fed. R. Civ. P. 8(d)(2), (3).

      Here, as in other cases, a jury is "free to believe all, some or none of a plaintiff's testimony," *Buchy*, 2015 WL 8207492, at *3, 2015 U.S. Dist. LEXIS 163469, *8, and determine whether "the Officers either used excessive force, or one [] of them failed to intervene while another officer used excessive force," *Cumberbatch v. Port Auth. Of N.Y. & N.J.*, No. 03-cv-749, 2006 WL 3543670, at *11, 2006 U.S. Dist. LEXIS 88853, at *35 (S.D.N.Y. Dec. 5, 2006). There are issues of fact regarding the need for the use of force, the duration of the use of force, and the amount of force actually employed; if there was an excessive use of force, a jury might find that only one of the Defendants' use of force was excessive. *See, e.g., Dorceant v. Aquino*, No. 15-cv-7103, 2017 WL 3575245, at *4, 2017 U.S. Dist. LEXIS 131633, at *9 (E.D.N.Y. Aug. 17, 2017) ("While it is true that a defendant cannot be liable for directly participating and for failing to intervene, . . . the undisputed facts do not allow me to determine which officers should be

7

liable as direct participants and which as non-intervenors." (citations omitted)). Thus, Defendants' motion for partial summary judgment on this basis is denied.

B.     **Opportunity to Intervene**

Defendants next argue that Plaintiffs' failure to intervene claims must be dismissed because "neither of the Defendant Officers had the opportunity to intervene in the other's actions." (Dkt. No. 66-17, at 13). Plaintiffs respond that summary judgment is improper because genuine issues of material fact remain regarding the duration of Plaintiffs' arrests and the force used by Defendants. (Dkt. No. 69, at 5–7).

"Whether an officer failed to intervene to prevent an unlawful use of force is a fact-intensive inquiry[.]" *John v. City of New York*, 406 F. Supp. 3d 240, 246 (E.D.N.Y. 2017). For Plaintiffs to succeed on their failure to intervene claims, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Lennox*, 968 F.3d at 158 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless 'considering all the evidence, reasonable jury could not possibly conclude otherwise.'" *Hicks v. Craw*, 405 F. Supp. 3d 374, 385 (N.D.N.Y. 2019) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)). Here, there remain genuine issues of material fact that prevent the granting of summary judgment and dismissal of Plaintiffs' failure to intervene claims.

First, with respect to Plaintiff Williams's arrest, Defendants argue that they "were concentrated on different parts of [Plaintiff] Williams' body and neither observed what the other was doing" and that in any event, the arrest happened so quickly "that neither of the Defendant Officers would have had the time to intervene to stop the other from using force." (Dkt. No. 66-17, at 13–14). Defendants testified that Plaintiff Williams' arrest took "approximately two minutes." (Dkt. No. 66-10, ¶ 11; Dkt. No. 66-11, ¶ 10). Plaintiff Williams, on the other hand,

8

testified that Defendants beat him on the ground for twenty to thirty minutes. (Dkt. No. 66-21, at 23). Defendants also testified that they were facing away from each another, "back-to-back," unaware of what the other was doing. (Dkt. No. 66-10, ¶¶ 6–8; Dkt. No. 66-11, ¶¶ 7–9). Plaintiff Williams testified, however, that Defendants would have seen each other according to the nature of the arrest, (Dkt. No. 66-21, at 19–20), and Plaintiff Chrysler testified that both Defendants were focused on Plaintiff Williams's upper torso and head while the Half Penny Pub bouncer "held [Plaintiff Williams's] legs down," (Dkt. No. 66-20, at 16). These issues of fact are fit for a jury to decide, as "[a]ssessments of credibility and choices between conflicting versions of the events are [] not for the court on summary judgment." *See Jeffreys*, 426 F.3d at 553.

Second, regarding Plaintiff Chrysler's arrest, Defendants argue that Defendant Liadka could not be found liable for failure to intervene because his "attention remained with [Plaintiff Williams]" as Plaintiff Williams "kick[ed] and thrash[ed] on the ground after being handcuffed[.]" (Dkt. No. 66-17, at 14; *see also* Dkt. No. 66-11, ¶ 11). According to Defendants, when Defendant DiPuccio left Plaintiff Williams and "moved approximately five feet away and told [Plaintiff] Chrysler that she was under arrest," Defendant Liadka "did not assist in [Plaintiff] Chrysler's arrest and did not observe [Defendant] DiPuccio take her to the ground." (Dkt. No. 66-17, at 14; *see also* Dkt. No. 66-10, ¶¶ 12, 15, 17; Dkt. No. 66-11, ¶¶ 11, 13). But the dispute as to what happened once Plaintiff Chrysler was on the ground creates genuine issues of material fact.

Defendant DiPuccio testified that "[Plaintiff] Chrysler's arrest took approximately [forty-five] seconds[,]" (Dkt. Nos. 66-10, ¶ 16). But Plaintiff Chrysler testified that "she had like four officers with knees in [her] back," including "a blond woman," Defendant DiPuccio, and other officers Plaintiff Chrysler could not see. (Dkt. No. 66-20, at 18). Plaintiff Chrysler testified that

9

their knees were on her "back[,] . . . back of [her] stomach, [and] back of [her] shoulders." (*Id.*). And contrary to Defendants' portrayal of the arrest, Plaintiff Chrysler testified that she was not struggling, resisting, or otherwise trying to get away. (*Id.*). Plaintiff Chrysler described the officers with knees on her back as "going from [Plaintiff Chrysler] to [Plaintiff Williams] holding [them] down." (*Id.*).

"Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Cornell*, 2023 WL 5965431, at *8, 2023 U.S. Dist. LEXIS 162919, at *19 (quoting *Branen*, 17 F.3d at 557). Here, a jury could credit Plaintiffs' testimony that neither of them were kicking or thrashing against Defendants during the arrests, (Dkt. No. 66-20, at 15; Dkt. No. 66-21, at 19–20), which would undermine Defendant Liadka's testimony that his "attention remained on" Plaintiff Williams" while Defendant DiPuccio arrested Plaintiff Chrysler because Plaintiff Williams was "kicking and thrashing," (Dkt. No. 66-11, ¶ 11). The Second Circuit has explained that there is no "bright-line rule" for how much time must lapse before a failure to intervene claim may arise. *Figueroa*, 825 F.3d at 107. Thus, a jury would be free to weigh Defendant DiPuccio's testimony that Plaintiff Chrysler's arrest "took approximately [forty-five] seconds[,]" (Dkt. Nos. 66-10, ¶ 16), and Defendant Liadka's testimony that he did not assist in arresting Plaintiff Chrysler and his "attention remained on [Plaintiff Williams] while [Defendant] DiPuccio went to arrest [Plaintiff] Chrysler," (Dkt. No. 66-11, ¶¶ 11–13), against Plaintiff Chrysler's testimony that Defendant DiPuccio "had his knees in [her] back" and that subsequently, "four officers [had their] knees in [her] back" and were "going from [Plaintiff Chrysler] to [Plaintiff Williams] holding [them] down," (Dkt. No. 66-20, at 18), alongside any other factors, including "the number of officers

present, their relative placement, the environment in which they acted, [and] the nature of the assault," *Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 251 (N.D.N.Y. 2023) (quoting *Figueroa*, 825 F.3d at 107), to determine whether either Defendant failed to intervene during the arrest of Plaintiff Chrysler.

Because there are genuine issues of material fact, Defendants' motion for partial summary judgment is denied with respect to Plaintiffs' failure to intervene claims during Defendants' arrests of Plaintiffs.

### C. Failure to Intervene in Alleged Excessive Force Used Inside Ambulance

Lastly, Defendants argue that "it would have been impossible for [Defendant] DiPuccio to have had any personal involvement in the events that occurred inside of the ambulance, including intervening in any alleged force that [Defendant] Liadka used while in the ambulance." (Dkt. No. 66-17, at 15). Plaintiffs admit that "[Defendant] DiPuccio was not present in the ambulance[]" that transported Plaintiffs to Upstate University Hospital, and "[Defendant] DiPuccio was not aware of any force allegedly used by [Defendant] Liadka in the ambulance. (Dkt. No. 66-16, ¶¶ 92, 98, 100; Dkt. No. 69-2, ¶¶ 92, 98, 100).

At oral argument, the parties agreed that Defendant DiPuccio had no involvement in any use of force in the ambulance during transportation of Plaintiffs to Upstate University Hospital. Accordingly, Defendants' motion for partial summary judgment is granted as to any claims against Defendant DiPuccio arising from actions taken in the ambulance during transportation of Plaintiffs to Upstate University Hospital.

### V.   CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that Defendants' motion for partial summary judgment, (Dkt. No. 66), is **GRANTED in part** and **DENIED in part**; and it is further

11

**ORDERED** that Defendants' motion for partial summary judgment, (Dkt. No. 66), is **GRANTED** with respect to Plaintiffs' claim of excessive force and failure to intervene against Defendant DiPuccio arising from any actions in the ambulance during transportation of Plaintiffs to Upstate University Hospital, and that claim is **DISMISSED**; and it is further

**ORDERED** that Defendants' motion for partial summary judgment, (Dkt. No. 66), is otherwise **DENIED.**

Dated: April 24, 2024
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge